**FAEGRE DRINKER BIDDLE & REATH LLP**
*A Delaware Limited Liability Partnership*
Jack N. Frost, Jr. (#02531-2005)
600 Campus Drive
Florham Park, New Jersey 07932-1047
Tel.:   (973) 549-7000
Fax:   (973) 549-9831
Jack.Frost@faegredrinker.com

Lauren Steinhaeuser (*pro hac vice* to be filed)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Lauren.Steinhaeuser@faegredrinker.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BIOMET 3i, LLC | ) | Civil No. _____ |
| ZIMMER DENTAL, INC., | ) | |
| | ) | **COMPLAINT** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEGRATED DENTAL SYSTEMS, | ) | |
| LLC | ) | |
| | ) | |
| Defendant. | ) | |

For their Complaint against defendant Integrated Dental Systems, LLC, plaintiffs Biomet 3i, LLC and Zimmer Dental, Inc. state and allege as follows:

**NATURE OF THE ACTION**

1.      By this Complaint, plaintiffs Biomet 3i, LLC ("Biomet 3i") and Zimmer Dental, Inc. ("Zimmer Dental") (collectively "Zimmer Biomet Dental" or

"Plaintiffs"), seek injunctive relief, damages, and other remedies provided by law to remedy injuries caused by defendant Integrated Dental Systems, LLC ("IDS" or "Defendant") for trademark infringement and false advertising pursuant to the Lanham Act and unfair competition under New Jersey law.

2.      Zimmer Biomet Dental is a leading supplier of premium dental implants in the United States.

3.      IDS sells implant systems that it markets as cheap replacements that are "compatible" with Zimmer Biomet Dental's implant systems. But IDS's marketing and advertising misrepresent the extent to which its implant systems are allegedly similar to, superior to, and/or interchangeable with Zimmer Biomet Dental's implants, and IDS is therefore misleading consumers, presenting serious safety risks to patients, and causing irreparable harm to Zimmer Biomet Dental.

4.      IDS also markets and sells its Certus implant system under a confusingly similar trademark to the CERTAIN® trademark owned by Biomet 3i, a brand used by Biomet 3i for over a decade to market and sell dental implants.

5.      Taken together with IDS's unrestrained reliance on Plaintiffs' trademarks and recognized elements of Zimmer Biomet Dental's advertising and marketing materials, IDS's clear intent is to trade off the goodwill of Zimmer Biomet Dental's industry-leading dental products.

6.      Plaintiffs ask this Court to enjoin Defendant's unlawful actions, and award Plaintiffs damages sustained by reason of Defendant's acts, Defendant's ill-gotten gains, and Plaintiffs' reasonable attorney's fees, and to ensure that patients and doctors continue to have access to safe and reliable dental components.

## THE PARTIES

7.      Plaintiff Biomet 3i is a Florida limited liability company with a principal place of business located at 4555 Riverside Drive, Palm Gardens, Florida 33410.

8.      Plaintiff Zimmer Dental is a Delaware corporation with a principal place of business located at 1900 Aston Avenue, Carlsbad, California 92008.

9.      Defendant IDS, on information and belief, is a New Jersey limited liability company with its principal place of business located at 145 Cedar Lane, Englewood, New Jersey 07631.

## JURISDICTION AND VENUE

10.      This is an action for trademark infringement, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, trademark infringement and unfair competition under N.J.S.A. § 56:3-13.16 and N.J.S.A. § 56:4-1, and for unfair competition under New Jersey common law.

11.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121 because Plaintiffs' claims present well-pleaded federal questions that arise under the Lanham Act.

12.   This Court has supplemental jurisdiction over Plaintiffs' New Jersey statutory and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367 because these claims are joined with substantial and related claims under the Lanham Act, and are so related to the claims under the Lanham Act that they form part of the same case or controversy under Article III of the United States Constitution.

13.   The exercise of *in personam* jurisdiction over Defendant comports with the laws of the State of New Jersey and the constitutional requirements of due process because Defendant resides in this District and, on information and belief, Defendant and/or its agents transact business and/or offer to transact business within the State of New Jersey.

14.   This Court has personal jurisdiction over Defendant, and venue is proper in this District pursuant to 28 U.S.C. §§ 1391 as Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## ALLEGATIONS RELEVANT TO ALL COUNTS

### Zimmer Biomet Dental

15.     Zimmer Biomet Dental is a global leader in oral reconstruction, including in the surgical, restorative, digital, and regenerative segments of the dental market. Specifically, Zimmer Biomet Dental develops, manufactures, and markets products designed to enhance oral rehabilitation through the replacement of teeth and the repair of hard and soft tissues. These products include dental reconstructive implants and related instrumentation, bone substitute materials, and regenerative products and materials.

16.     A dental implant is a medical device that is surgically implanted in a patient's upper or lower jawbone, as shown below, to act as the root of a missing tooth and to provide an anchor for an artificial tooth. Dental implants are often small screws or cylinders, normally constructed of titanium. ***See* Ex. A**.



17.    In order to implant the dental implant, the surgeon drills into the jawbone. After the gum tissue heals around the implant site, a connector, called an abutment, is placed inside and secured to the dental implant. A dental restoration, such as an artificial crown, can then be joined to the abutment.

18.    Given the tight microgeometries associated with oral reconstruction, strict tolerances of implants and the corresponding surgical instruments are essential to safeguarding the functionality and success of a dental implant.

19.    Zimmer Biomet Dental is consistently recognized in the industry as one of the top five dental implant manufacturers among more than a hundred other companies. *See, e.g.*, **Ex. B**; **Ex. C**; **Ex. D**; and **Ex. E**.

20.    Zimmer Biomet Dental's success and market share reflect Zimmer Biomet Dental's investment in the research, quality, safety, efficacy, and durability

of its products. Zimmer Biomet Dental maintains strict quality controls with respect to its products, including undergoing an extensive quality-control regime and rigorous testing before, during, and after manufacture.

### Biomet 3i's CERTAIN® Implant System

21.     By at least 2005, Biomet 3i, including its predecessors, launched the CERTAIN® Implant System, an internally connected system that, through the use of the QuickSeat® connection, provides audible and tactile feedback when abutments are seated into the implant. ***See* Ex. F at II**.



22.     In addition, the 6/12-point connection design of the CERTAIN® Implant System offers enhanced flexibility in placing the implant and abutment to support proper clinical function. ***See* Ex. F at II.**



- The 6/12 hex inside the internal connection incorporates both a 6-point single and a 12-point double hex. The 6-point single hex has two functions: engaging the driver tip for mountless delivery during implant placement and providing anti-rotation for all straight abutments. The 12-point double hex provides 30° rotational positioning for pre-angled abutments.

23.     The CERTAIN® Implant System includes both straight and tapered format implants and other components. The tapered format implants include a total of 37 implant microgeometries, comprising diameters of: 3.25, 4.0, 5.0 and 6.0; at six corresponding lengths of: 8.5, 10, 11.5, 13, 15, and 18; and four corresponding platform diameters: 3.4, 4.1, 5.0, and 6.0. **Ex. F at 1–4**.

24.     The geometry of each implant is unique such that the only way to ensure that the surgical osteotomy properly fits and supports the specific implant microgeometry is to use a corresponding shaping drill.

25.     Biomet 3i developed the Tapered Implant Surgical Kit, shown below, with specially designed components and surgical instruments for use with the CERTAIN® Tapered Implant System, including 20 Quad Shaping Drills corresponding to each unique implant microgeometry. **Ex. F at 24.**



26.    Zimmer Biomet Dental's Surgical Manual emphasizes: "The specifications of the BIOMET 3i Tapered Implant and the corresponding Quad Shaping Drills . . . are held to rigorous tolerances, which are intended to provide a closely integrated implant-to-osteotomy fit and primary stability." **Ex. H, at 65**; ***see also id.*** **at 9** (emphasizing why the tapered-implant technique is different).

27.    Since at least as early as 2005, Biomet 3i, and its predecessors, has manufactured, advertised, and sold dental implants under the trademark CERTAIN (the "CERTAIN Mark"). For over 15 years, Biomet 3i has continuously used the CERTAIN Mark to distinguish its products from those of its competitors, investing time and resources in the development of its CERTAIN® Implant System and associated goodwill. As a result of Biomet 3i's long-term and widespread use of the CERTAIN Mark, Biomet 3i holds expansive nationwide rights in the mark.

28.     In order to protect the extensive goodwill it has accrued over the years in its CERTAIN Mark, in 2005 Biomet 3i registered its CERTAIN Mark on the principal register of the United States Patent and Trademark Office (the "USPTO"). Biomet 3i is the owner of all right, title, and interest in and to incontestable U.S. Trademark Registration No. 2,934,084 for the CERTAIN Mark in International Class 010 covering *dental implants, namely, a dental implant system comprising surgical and restorative components used in dental therapy.* A copy of the certificate of registration is attached hereto as **Exhibit I**.

29.     The CERTAIN Mark is a valuable asset to Biomet 3i and it has considerable goodwill and value.

30.     Biomet 3i has expended significant resources in advertising and promoting its products and services under the CERTAIN Mark, prominently featuring the CERTAIN Mark in its advertising, whether online or in print, examples of which are depicted below, **Ex. J; Ex. K; Ex. L, Ex. Y:**









31.     Through Biomet 3i's substantial investment in continuous and extensive sales, advertising, and promotion of its goods and services under the CERTAIN Mark, and through the exercise of control over the quality of goods and services under that Mark, the CERTAIN Mark has amassed substantial and valuable goodwill and consumer recognition. Consumers closely associate the distinctive CERTAIN Mark with Biomet 3i and its goods and services.

32.     From 2005 up to at least December 2017, Biomet 3i marketed and advertised the CERTAIN® Implant System using recognized marketing elements of Biomet 3i. For example, Biomet 3i marketed and advertised the CERTAIN®

Implant System with an image of the Biomet 3i trademark[1] in the Biomet 3i signature blue, as shown below. *See* **Ex. F at cover, II.**











*See also*  **Ex. N**. Biomet 3i's recognized marketing elements distinguish Biomet

3i's dental products from those of others and are associated with Biomet 3i's dental

---

[1] Biomet 3i is the owner of all right, title, and interest in and to incontestable U.S. Trademark Registration No. 1,628,174 for the 3i Mark in International Class 010 covering, among other goods, *dental implants*. A copy of the certificate of registration is attached hereto as **Exhibit . M**.

implant systems. Finally, the Biomet 3i signature blue remained essentially the same from 2005 through at least 2017.

33.    Customers recognize Biomet 3i as the source of its high-quality implants communicated for over a decade through Biomet 3i's recognized marketing elements. Biomet 3i expended significant effort in developing its trademarks and recognized marketing elements in the United States. As a result of such efforts to distinguish Biomet 3i's branding from others in the marketplace, and the significant customer recognition that surrounds the Biomet 3i brand, the public associates the Biomet 3i trademarks and its recognized marketing elements with Biomet 3i and Zimmer Biomet Dental.

**Zimmer Dental's Tapered SCREW-VENT® Implant System**

34.    By at least 1999, Zimmer Dental launched the Tapered SCREW-VENT® Implant System, also referred to as TSV®,[2] a dental product line that provides the clinician a tapered geometry that mimics the natural shape of a tooth root. The Tapered SCREW-VENT® Implant System was developed to minimize valuable chair time for restorations even in the most challenging locations. As

---

[2] Zimmer Biomet Dental is the owner of all right, title, and interest in and to U.S. Trademark Registration No. 5,475,774 for the TSV® mark in International Class 010 covering *dental implants composed of artificial materials and surgical instruments used in association therewith*. A copy of the certificate of registration is attached hereto as **Exhibit O**.

shown below, featuring a screw-vent design, patented internal hex connection, multiple lead threads for reduced insertion time, and selective surface coatings, the Tapered SCREW-VENT® products are technologically advanced dental implants. **Ex. P**.



35.     The Tapered SCREW-VENT® implants are available in four implant diameters: 3.7 mm, 4.1 mm, 4.7 mm, and 6.0 mm; five corresponding lengths:  8.0 mm, 10 mm, 11.5 mm, 13 mm, and 16 mm; and three corresponding platform diameters: 3.5 mm, 4.5 mm, and 5.7 mm. **Ex. P at 9.**

36.    The geometry of each implant is unique such that the only way to ensure that the surgical osteotomy properly fits and supports the specific implant microgeometry is to use a corresponding sized drill.

37.    Zimmer Dental developed the Tapered Screw-Vent Surgical Kit, shown below, with specially-designed components and surgical instruments for use with the Tapered SCREW-VENT® Implant System, **Ex. A at 67**:



38.    Since its introduction in 1999, the Tapered SCREW-VENT® Implant System has gained the trust of thousands of surgeons worldwide to deliver successful patient outcomes, selling over 6 million Tapered SCREW-VENT® implants. This success is well documented, for example, with 130 peer-reviewed papers and a 98.7% cumulative survival rate.

39.    Since at least as early as 1999, Zimmer Dental, and its predecessors, has manufactured and sold the Tapered SCREW-VENT® Implant System

components under the SCREW-VENT® trademark (the "SCREW-VENT Mark").
For over 20 years, Zimmer Dental has continuously used the SCREW-VENT Mark
to distinguish its products from those of its competitors, investing time and
resources in the development of its Tapered SCREW-VENT® Implant System and
associated goodwill. As a result of Zimmer Dental's long-term and widespread use
of the SCREW-VENT Mark, Zimmer Dental holds expansive nationwide rights in
the mark.

40.     In order to protect the SCREW-VENT Mark, in 1987 Zimmer Dental,
through its predecessors, registered its SCREW-VENT Mark on the principal
register of the USPTO. Zimmer Dental is the owner of all right, title, and interest
in and to incontestable U.S. Trademark Registration No. 1,463,379 for the
SCREW-VENT Mark in International Class 010 covering *dental implants and
adapters therefor*. A copy of the certificate of registration is attached hereto as
**Exhibit Q**.

41.     The SCREW-VENT Mark is a valuable asset to Zimmer Dental and it
has considerable goodwill and value.

42.     Zimmer Dental and its predecessors expended significant resources in
advertising and promoting its products and services under the SCREW-VENT
Mark, prominently featuring the Mark in its advertising, whether online or in print,
examples of which are depicted below, **Ex. U; Ex. P; Ex. V**:



Trabecular Metal™ And Tapered
Screw-Vent® Implant Systems

Surgical Manual





43.     Through Zimmer Dental's substantial investment in continuous and extensive sales, advertising, and promotion of its goods and services under the SCREW-VENT Mark, and through the exercise of control over the quality of goods and services under that Mark, the SCREW-VENT Mark has amassed substantial and valuable goodwill and consumer recognition. Consumers closely associate the distinctive SCREW-VENT Mark with Zimmer Dental and its goods and services.

44.     Since at least January 2004, Zimmer Dental has marketed and advertised the Tapered SCREW-VENT® Implant System using recognized marketing elements of Zimmer Dental. For example, Zimmer Dental marketed and

advertised the Tapered SCREW-VENT® Implant System with the Zimmer® trademark[3] (the ZIMMER Mark) and an image of the ZIMMER Mark in the Zimmer signature cerulean blue, as shown below.



---

3 Zimmer, Inc. is the owner of all right, title, and interest in and to incontestable U.S. Trademark Registration No. 3,303,411 for the ZIMMER Mark in International Class 010 covering, in relevant part, *dental implants and prostheses; instruments, and apparatus and adaptors and accessories therefore*; Zimmer Dental is a subsidiary of Zimmer, Inc. and is authorized to use the ZIMMER® trademark. A copy of the certificate of registration is attached hereto as **Exhibit R**.

*See* **Ex. A**. Zimmer Dental's recognized marketing elements distinguish Zimmer Dental's dental implants from those of others and are associated with Zimmer Dental as the source of dental implant systems. Finally, Zimmer Dental's recognized marketing elements remained essentially the same from 2012 through the filing of this complaint.

45.   Customers recognize Zimmer Dental as the source of its high-quality implants communicated for at least nearly a decade through Zimmer Dental's recognized marketing elements. Zimmer Dental expended significant effort in developing its trademarks and recognized marketing elements in the United States. As a result of such efforts to distinguish Zimmer Dental's branding from others in the marketplace, and the significant customer recognition surrounding the Zimmer Dental brand, the public associates Zimmer Dental's recognized marketing elements exclusively with Zimmer Dental.

## **DEFENDANT'S UNLAWFUL CONDUCT**

46.   Defendant is a competitor of Zimmer Biomet Dental, selling a series of dental implant systems that it markets as "compatible" with, significantly cheaper than, and even superior to implant systems manufactured by industry-leading brands, including Zimmer Biomet Dental. Indeed, Defendant's business is centered on trading on the substantial goodwill associated with industry-leading products.

47.     Defendant's marketing of its dental implant systems excessively emphasizes that the products are "compatible" with industry-leading brands, either referred to by the brands' wordmarks or collectively as the "BIG" brands.

48.     Defendant operates a website at idsimplants.com to promote its dental implant systems.

49.     Defendant's website advertises two dental implant systems as being "compatible with" Zimmer Biomet Dental implants. Specifically, Defendant advertises the Tapered Screw implant system as being compatible with the Zimmer® Tapered SCREW-VENT® Implant System, and Defendant advertises the Certus implant system as being compatible with the Biomet 3i™ Tapered Certain® Implant System.

50.     For example, as shown in the image below, highlighted for emphasis, the cover of Defendant's implant systems product brochure focuses on the alleged compatibility of Defendant's systems with various industry-leading brands, including Zimmer Biomet Dental. *See* **Ex. S**.



51.    Defendant's website also relies extensively on an association with the industry-leading manufacturers, like Zimmer Biomet Dental, to advertise and sell Defendant's products, as shown in the screenshot below, modified to highlight references to the leading brands, **Ex. T**:



52.   Defendant's Certus and Tapered Screw dental implant systems are not shown on Defendant's website without also referencing Zimmer Biomet Dental or Direct or BIG Brands.

53.   Defendant's advertising and marketing of its dental implant systems repeatedly and consistently states or implies that its dental implant systems are completely compatible with, interchangeable with, and superior to all of the industry leading systems, including the Zimmer Biomet Dental products, while simultaneously offering a 50-80% price discount.

54.   For example, Defendant's marketing materials claim "compatibility with 'BIG' brands" but "at a fraction of the cost" while "offering uncompromised quality and performance." *See* **Ex. S at 3.**

55.     Defendant's website also claims: "Documented better fit and seal" above images of both a "'BIG' brand abutment on a 'BIG' brand implant" and a "'BIG' brand abutment on Reflect Rapid Implant,'" implying Defendant's products may be used in conjunction with other brands. **Ex. S at 4**.

56.     Defendant's website further claims that Reflect® Implants "offer surgical and prosthetic compatibility with 'BIG' brands but do so at a fraction of the cost – up to 80% less – while at the same time, offering uncompromised quality and performance." *See* **Ex. S at 4**.

57.     Similarly, on a YouTube video on Defendant's website, the CEO, COO, and VP of Sales claim that the Reflect Implant line "feels and looks exactly like the original product," and is "compatible with all the major brands at half the price." https://www.youtube.com/watch?v=nVdh-jxq0bA.

58.     Defendant's marketing and advertising claims regarding the compatibility and relative quality of the Certus and Tapered Screw implant systems in comparison to the Zimmer Biomet Dental products are false and misleading.

59.     In addition, Defendant markets its dental implant systems as indicated above while also using confusingly similar colors as the "BIG" brands, as shown in the comparison below, clearly seeking to trade on the high quality and goodwill of the "BIG brands," including Zimmer Biomet Dental. **Ex. S at 7**.














60. Defendant markets its dental implant systems as indicated above while also using confusingly similar product names as the "BIG" brands, clearly

seeking to trade on the high quality and goodwill of the "BIG brands," including Zimmer Biomet Dental.

61.    For example, the chart below shows the names Defendant gave its products that are confusingly similar to the names of the "compatible" Zimmer Biomet Dental systems.

| Defendant's System | Zimmer Biomet Dental's System |
|---|---|
| Tapered Screw | Tapered Screw-Vent |
| Certus | Certain |

62.    Defendant's use of the name CERTUS for its dental implant system comprised of tapered implants infringes on Biomet 3i's trademark rights. On information and belief, in or around 2019, Defendant started to advertise, manufacture, and sell dental products using the mark CERTUS. As mentioned above, Defendant claims that its Certus implant system is compatible with Biomet 3i's CERTAIN® Implant System.

63.    On information and belief, Defendant offers for sale and sells products under the CERTUS mark across the United States, including in the State of New Jersey.

64. Defendant offers for sale and sells its Certus Implant System using a confusingly similar imitation of Biomet 3i's CERTAIN Mark.

65. For example, Defendant offers for sale and sells Defendant's implant system components under the CERTUS mark as depicted below. **Ex. S at 7, 22-23**.







66.     Defendant's CERTUS mark is similar in sight, sound, and meaning to Biomet 3i's CERTAIN mark. In fact, "certus" is a Latin word that means "certain." Consumers who encounter the CERTUS mark used in connection with a dental implant system that includes tapered implants—an identical service to the Biomet 3i CERTAIN® Implant System—are likely to be confused as to the source of the Certus products, especially because Biomet 3i offers for sale and sells its CERTAIN® Implant System in New Jersey. Therefore, it is highly likely that consumers will mistakenly believe that Defendant is selling Biomet 3i dental products when Defendant is not.

67.     The products advertised and sold by Defendant under the CERTUS mark directly compete with the products advertised and sold by Biomet 3i under the CERTAIN mark, and these products are advertised through overlapping channels of trade, including via the internet and social media to consumers located in New Jersey.

68.     Defendant's use of the name "Certus" for a dental implant system is evidence of Defendant's willful and misleading marketing efforts to trade on the goodwill and market recognition enjoyed by Zimmer Biomet Dental, and specifically Biomet 3i's CERTAIN® Implant System.

69.     For its Certus system, Defendant chose a name similar to that of Biomet 3i that has been on the market for over a decade. Defendant knew of

Biomet 3i's CERTAIN® Implant System and, on information and belief, intentionally chose a confusingly similar name in order to trade on Biomet 3i's goodwill in the marketplace.

70.    On information and belief, Defendant also offers for sale and sells products under the name "Tapered Screw" across the United States, including in the State of New Jersey.

71.    Defendant's use of the name "Tapered Screw" for another implant system is further evidence of Defendant's willful and misleading marketing efforts to trade on the goodwill and market recognition enjoyed by Zimmer Biomet Dental, and specifically Zimmer Dental's Tapered SCREW-VENT® Implant System.

72.    For example, for each of its other dental implant systems, Defendant chose non-descriptive names: Recover, Rapid, and Aspire. Yet for the Tapered Screw system, Defendant chose a name that shares two of three words with a Zimmer Dental implant system that has been on the market for over 20 years. Defendant knew of Zimmer Dental's Tapered SCREW-VENT® Implant System and, on information and belief, intentionally chose a confusingly similar name in order to trade on Zimmer Dental's goodwill in the marketplace. Consumers are likely to be confused as to the source of the Tapered Screw system and therefore it

is highly likely that consumers will mistakenly believe that Defendant is selling Zimmer Dental products when Defendant is not.

73.   In addition to adopting confusingly similar trademarks, Defendant advertises its Certus and Tapered Screw implant systems using false and misleading statements that deceive, or have a tendency to deceive, a substantial segment of Zimmer Biomet Dental's customers and potential customers.

74.   On information and belief, in February 2019, Defendant notified the Food and Drug Administration ("FDA") that it believed its Certus and Tapered Screw implant systems were "substantially equivalent" to implant systems already on the market, namely the 3i CERTAIN® and Tapered SCREW-VENT® implants. **Ex. W.** Defendant stated: "Reflect™ Implant System prosthetic components are compatible with the following implant systems" providing the following chart, which has been modified to highlight the Zimmer Biomet Dental devices:

| Implant System Compatibility | Implant Body Diameter (mm) | Platform Diameter (mm) |
|---|---|---|
| OsseoSpeed™ | 3.5 | 3.5/4.0 |
| | 4.0 | 3.5/4.0 |
| | 5.0 | 4.5/5.0 |
| 3i Certain® | 3.25 | 3.4 |
| | 4.0 | 4.1 |
| | 5.0 | 5.0 |
| NobelActive® | 3.5 | NP |
| | 4.3 | RP |
| | 5.0 | RP |
| NobelReplace Conical | 3.5 | NP |
| | 4.3 | RP |
| | 5.0 | RP |
| Tapered Screw-Vent® | 3.7 | 3.5 |
| | 4.1 | 3.5 |
| | 4.7 | 4.5 |

75.    Defendant also stated: "The subject device consists of five product lines (Reflect™ Aspire, Reflect™ Certus, Reflect™ Rapid, Reflect™ Recover, Reflect™ Tapered) and three component designs (Cover Screw, Healing Abutment, and 30º Abutment)." *Id.* Defendant provided the below chart summarizing the Reflect™ implant sizes, modified to highlight the products identified by Defendant as "substantially equivalent" with the Zimmer Biomet Dental implant systems:

| Reflect™ Implant System | | | |
|---|---|---|---|
| Implant Line | Body Ø (mm) | Platform Ø (mm) | Implant Lengths (mm) |
| Aspire | 3.5 | 3.5 | 8, 9, 11, 13, 15 |
|  | 4.0 | 4.0 | 8, 9, 11, 13, 15 |
|  | 5.0 | 5.0 | 9, 11, 13, 15 |
| Certus | 3.3 | 3.4 | 8.5, 10, 11.5, 13, 15 |
|  | 4.0 | 4.1 | 8.5, 10, 11.5, 13, 15 |
|  | 4.9 | 5.0 | 8.5, 10, 11.5, 13, 15 |
| Rapid | 3.5 | NP | 8.5, 10, 11.5, 13, 15 |
|  | 4.3 | RP | 8.5, 10, 11.5, 13, 15 |
|  | 5.0 | RP | 8.5, 10, 11.5, 13, 15 |
| Recover | 3.5 | NP | 8.5, 10, 11.5, 13, 16 |
|  | 4.3 | RP | 8.5, 10, 11.5, 13, 16 |
|  | 5.0 | RP | 8.5, 10, 11.5, 13, 16 |
| Tapered | 3.7 | 3.5 | 8.5, 10, 11.5, 13, 16 |
|  | 4.1 | 3.5 | 8.5, 10, 11.5, 13, 16 |
|  | 4.7 | 4.5 | 8.5, 10, 11.5, 13, 16 |

Defendant further provided abutment sizes, noting that "each abutment is provided in each platform diameter listed." *Id.*

76.    Finally, Defendant acknowledged that, in comparing the Reflect™ system to predicate devices, there could be "device types/dimensions/designs that are not included in the subject device system." *Id.*

77.    The Primary Predicate Device was not a Zimmer Biomet Dental device.

78.    On information and belief, Defendant did not submit clinical data with its submission to the FDA. **Ex. W at 7**.

79.    On information and belief, Defendant's Certus and Tapered Screw systems include "device types/dimensions/designs that are not included in the" Zimmer Biomet Dental CERTAIN® and Tapered SCREW-VENT® Implant Systems, and vice versa.

80.    On information and belief, on March 29, 2019, the FDA issued a determination that, based on Defendant's representations, the Reflect Implant System was "substantially equivalent (for the indications for use stated in the enclosure) to legally marketed predicate devices," including the Zimmer Biomet Dental CERTAIN® and Tapered SCREW-VENT® Implant Systems described above. **Ex. W at 2.** The FDA granted Defendant permission to "market the device, subject to the general control provisions of the [Federal Food, Drug, and Cosmetic] Act." *Id.*

81.    The FDA's determination found that Defendant's implant system had "the same intended use," "similar technological characteristics," and was "made of similar materials" as the predicate devices, including the Zimmer Biomet Dental implant systems. *Id.*

82.    The FDA's determination did not include a finding that Defendant's Reflect Implant System or its individual components were interchangeable with or superior to the Zimmer Biomet Dental CERTAIN® and Tapered SCREW-VENT® Implant Systems.

83.    The FDA further clarified that "FDA's issuance of a substantial equivalence determination does not mean that FDA has made a determination that your device complies with other requirements of the Act or any Federal statutes and regulations administered by other Federal Agencies," *id.*, which includes the Lanham Act.

84.    In or around 2019, Defendant started to advertise its Reflect Implant Systems in a manner creating the false impression in consumers' minds that Defendant's implant systems are interchangeable with, better than, and/or associated with Zimmer Biomet Dental's implant systems.

85.    For example, Defendant's marketing materials state that Defendant's products "***offer surgical and prosthetic compatibility*** with 'BIG' brands but do so at a faction of the cost – up to 80% less –  while at the same time, ***offering***

*uncompromised quality and performance*." *See* **Ex. X** (emphasis added), and that Defendant's products are "*[p]erfectly matched* with" Zimmer Biomet Dental's Tapered CERTAIN® and Tapered SCREW-VENT® systems "so there's no need to change your technique or surgical kits." **Ex. X**.

86.    Defendant also labels each page of its catalogue for both the Certus and Tapered Screw systems as "compatible with" the Zimmer Biomet Dental products, regardless of whether the products were identified to the FDA.

87.    Defendant further asserts that its system "provide[s] *better outcomes* for you and your patients," and has "documented *better fit and seal*." **Ex. S at 4** (emphasis added).

88.    On information and belief, Defendant's statements and representations are false and misleading and are likely to cause significant harm to patients and, as a result, to Zimmer Biomet Dental.

89.    By way of example, Defendant's Certus system is not "perfectly matched" to the Biomet 3i CERTAIN® system, including because the CERTAIN® system offers features, in terms of both size and connection, that Defendant's system does not offer. For example, the CERTAIN® Implant System includes 37 implant geometries of various implant and platform diameters and implant lengths, while the Certus system includes only 14 geometries, not all of which overlap with the CERTAIN® implants. As another example, the Certus

system includes a 6-point anti-rotation feature, while some CERTAIN® implants include a 12-point anti-rotation feature. On information and belief, the 6-point and 12-point anti-rotation features are not interchangeable. These differences impact the strength, performance, stability, fit, alignment, and aesthetics of the overall implant system and dental restoration.

90.    As another example, Defendant's Tapered Screw system is not "perfectly matched" to the Zimmer Biomet Dental Tapered SCREW-VENT® Implant System, including because the Tapered SCREW-VENT® system offers features, including sizes, that Defendant's system does not offer. For example, the Zimmer Dental Tapered SCREW-VENT® Implant System includes 20 implant geometries of various implant and platform diameters and implant lengths, while Defendant's Tapered Screw system includes only 15 geometries, not all of which overlap with the Tapered SCREW-VENT® implants. These differences impact the strength, performance, stability, fit, alignment, and aesthetics of the overall implant system and dental restoration.

91.    Defendant's false and misleading advertising that Defendant's products are "perfectly matched" with Zimmer Biomet Dental's CERTAIN® and Tapered SCREW-VENT® Implant Systems can cause significant harm to the patient. For example, if a clinician uses Defendant's products in combination with Zimmer Biomet Dental's assuming they are "perfectly matched" and fails to detect

that Defendant's product is oversized or undersized (or has a 6 point hex connection, rather than a 12 point hex connection) compared to the Zimmer Biomet Dental product, this poses harm to the patient, creates a risk of damaging the Zimmer Biomet Dental implants, and creates a risk of reducing the durability and quality of the dental restoration. Once damaged, the implant needs to be removed using standard techniques up to and including the use of a trephine, which is a saw used to remove tissue or bone. This can be harmful to the patient and, at a minimum, could (a) require re-performance of the case starting from the very beginning or (b) require bone regeneration and repair, or (c) result in such invasive and destructive intervention that the case cannot be salvaged with implant dentistry.

92.   Damage caused to a patient's dental restoration experience, and/or damage caused to a CERTAIN® or Tapered SCREW-VENT® implant or abutment by one of Defendant's implants or abutments may cast doubt upon the otherwise safe and effective dental implants and abutments manufactured and sold by Zimmer Biomet Dental, resulting in harm to its goodwill and reputation.

93.   Defendant likewise engages in false and misleading advertising when it states that Defendant's products are also "compatible with surgical kits and common connection prosthetics," **Ex. T**, and that "there's no need to change your technique or surgical kits." **Ex. X.** These representations falsely imply the

40

Defendant's implants, abutments, instruments, and other products can serve as interchangeable substitutes to the Zimmer Biomet dental instruments and implant system despite substantial differences in the implant systems' respective components.

94.    For example, Defendant's surgical kit does not include the shaping drills for the Certus implant system that would be required to ensure that the surgical osteotomy properly fits and supports the specific implant microgeometry for each sized implant of the CERTAIN® Tapered Implant System.

95.    Defendant's surgical kit identifies placeholders for shaping drills, as shown in the annotated image below, **Ex. S at 32**:



96.     However, Defendant's corresponding product list, shown below, does not include any shaping drills, but rather twist drills of corresponding sizes to the kit sizes shown above, **Ex. S at 32**:

| Item No. | Description | Item No. | Description |
|----------|-------------|----------|-------------|
| MDE150 | Drill Extension | RCDT076 | Reflect Certus Bone Tap Ø 5.0 |
| TTAR100 | Torque Wrench Adapter | RCHCL | Reflect Certus Handpiece Connector Long 3.4/4.1 |
| MGD100L | Lance Drill | RCHCS | Reflect Certus Handpiece Connector Short 3.4/4.1 |
| RCDP004 | Reflect Certus Pilot Drill 2.0 | RCDP020 | Reflect Certus Ratchet Connector Long 3.4/4.1 |
| RCDP005 | Reflect Certus 3.2-8.5 Drill | RCDP021 | Reflect Certus Ratchet Connector Short 3.4/4.1 |
| RCDP006 | Reflect Certus Twist Drill Ø3.2-11 | RCDP022 | Reflect Certus Handpiece Connector Long 5.0 |
| RCDP007 | Reflect Certus Twist Drill Ø4.0-8.5 | RCDP023 | Reflect Certus Handpiece Connector Short 5.0 |
| RCDP008 | Reflect Certus Twist Drill Ø4.0-11 | RCDP024 | Reflect Certus Ratchet Connector Long 5.0 |
| RCDP009 | Reflect Certus Twist Drill Ø5.0-8.5 | RCDP025 | Reflect Certus Ratchet Connector Short 5.0 |
| RCDP010 | Reflect Certus Twist Drill Ø5.0-11 | RCHPDL | Reflect Certus Handpiece Connector Long |
| RCDP011 | Reflect Certus Countersink | RCHPDS | Reflect Certus Handpiece Connector Short |
| RCDT077 | Reflect Certus Countersink Drill 3.4 | RCHDL | Reflect Certus Hand Driver Long |
| RCDT078 | Reflect Certus Countersink Drill 4.1 | RCHDS | Reflect Certus Hand Driver Short |
| RCDT079 | Reflect Certus Countersink Drill 5.0 | DT101 | Ratchet Wrench with Square Head |
| RCDT074 | Reflect Certus Bone Tap Ø 3.4 | MDG200 | Depth Gauge |
| RCDT075 | Reflect Certus Bone Tap Ø 4.1 | | |

97.     Defendant further relies on Zimmer Biomet Dental's wordmarks and marketing elements (collectively, "Zimmer Biomet Dental's IP") in such a way as to suggest a sponsorship, connection, or association between the parties and products that does not exist. Defendant's reliance on Zimmer Biomet Dental's IP creates an unacceptable level of consumer confusion.

98.     Defendant directly invokes Zimmer Biomet Dental's IP in substantially all of its advertising materials. For example, Defendant's advertising for its Certus product prominently, consistently, and repeatedly displays both the

CERTAIN Mark and "Biomet 3i" or "3i" in a blue tone similar to that of the Biomet 3i logo.

99.     In addition, as shown above and below, Defendant's advertising for its Certus product prominently, consistently, and repeatedly displays Defendant's CERTUS mark in close proximity to Zimmer Biomet Dental's Biomet 3i word mark and CERTAIN Mark, as depicted below. In fact, on information and belief, Defendant prominently displays Zimmer Biomet Dental's Biomet 3i and CERTAIN marks in nearly all of Defendant's advertising for its Certus product. Defendant is not authorized to use Zimmer Biomet Dental's BIOMET 3i word mark or logo or the CERTAIN Mark to advertise and promote its competing products. *See* **Ex. AA**.



100. Similarly, Defendant's advertising for its Tapered Screw system prominently, consistently, and repeatedly displays Defendant's Tapered Screw mark in close proximity to Zimmer Biomet Dental's federally registered TSV and SCREW-VENT Marks, and Zimmer, Inc.'s federally registered ZIMMER Mark, as depicted below. On information and belief, Defendant prominently displays the ZIMMER and SCREW-VENT Marks in nearly all of Defendant's advertising for its Tapered Screw product. Defendant is not authorized to use the ZIMMER and SCREW-VENT Marks to advertise and promote its competing products. *See* **Ex. BB:**



101. On its social media platforms, and as shown for example above, Defendant uses hashtags incorporating Zimmer Biomet Dental's trademarks, including the CERTAIN Mark, the ZIMMER Mark, the TSV Mark, Biomet, Biomet 3i, and/or 3i to promote and draw an association between Defendant's Certus and Tapered Screw implant systems and Zimmer Biomet Dental's Implant Systems, allowing Defendant's posts to be found via Zimmer Biomet Dental's IP.

102. In addition, as shown below, Defendant uses hashtags incorporating the ZIMMER Mark even where the allegedly compatible systems are not mentioned, again allowing Defendant's posts to be found via Zimmer Biomet Dental's IP. *See* **Ex. CC:**



103. Defendant's use of the CERTUS mark, particularly in such close proximity to Zimmer Biomet Dental's IP, is likely to continue to cause confusion, mistake, or deception in the market as to the source or origin of Defendant's products, and to falsely suggest that Defendant and its products are sponsored by, connected to, or associated with Biomet 3i and/or Zimmer Biomet Dental. Such use trades on the goodwill associated with Biomet 3i's CERTAIN® Implant System, including the CERTAIN Mark, which has been built up by Biomet 3i over many years and at great expense.

104. Defendant's use of Tapered Screw brand name, particularly in such close proximity to Zimmer Biomet Dental's IP, is also likely to continue to cause

confusion, mistake, or deception in the market as to the source or origin of Defendant's products, and to falsely suggest that Defendant and its products are sponsored by, connected to, or associated with Zimmer Dental and/or Zimmer Biomet Dental. Such use trades on the goodwill associated with Zimmer Dental's Tapered SCREW-VENT® Implant System, including the SCREW-VENT and TSV Marks, which has been built up by Zimmer Dental over many years and at great expense.

105.   Upon information and belief, Defendant deliberately commenced use of the CERTUS mark and the Tapered Screw brand name with knowledge of Biomet 3i's CERTAIN Mark and Zimmer Dental's Tapered SCREW-VENT products as well as Zimmer Biomet Dental's products offered under both systems and related marks.

106.   Zimmer Biomet Dental has repeatedly notified Defendant of its intellectual property rights in the CERTAIN Mark and of Defendant's false and misleading advertising of its Certus and Tapered Screw products. On January 12, 2021, Zimmer Biomet Dental sent a first cease and desist letter to Defendant. Zimmer Biomet sent additional cease and desist letters on April 7, 2021 and June 8, 2021. Despite these numerous notifications, Defendant has persisted in its willful, concerted course of conduct.

107. By using the CERTUS mark and the Tapered Screw brand name in connection with dental implants, Defendant is willfully and intentionally trading upon the goodwill Zimmer Biomet Dental has developed in the CERTAIN mark and the Tapered SCREW-VENT brand at Zimmer Biomet Dental's considerable expense and effort. Defendant thereby has caused and is causing Zimmer Biomet Dental substantial and irreparable harm and injury.

108. Defendant's use of the Certus Mark and the Tapered Screw brand name in its advertising materials is likely to cause confusion, mistake or deception in the market as to the source of origin of Defendant's products, and to falsely suggest that Defendant and its goods are sponsored by, connected to, or associated with Zimmer Biomet Dental.

109. Defendant's use of Zimmer Biomet Dental's IP throughout its advertising materials is likely to cause confusion, mistake or deception in the market as to the source of origin of Defendant's products, and to falsely suggest that Defendant and its goods are sponsored by, connected to, or associated with Zimmer Biomet Dental.

## COUNT I
### (Infringement of Federally Registered Marks – 15 U.S.C. § 1114)

110. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

111.   Biomet 3i owns a valid federal trademark registration for the CERTAIN Mark for dental implants.

112.   Biomet 3i's registration of the CERTAIN Mark constitutes prima facie evidence of the validity of Biomet 3i's trademark rights and its exclusive right to use the CERTAIN Mark in commerce.

113.   Defendant is not authorized to use Biomet 3i's registered CERTAIN Mark or any mark confusingly similar to or that in any way represents or implies that Defendant's goods and/or services are in any way associated with Biomet 3i.

114.   Nevertheless, Defendant has used and continues to use in commerce the designation CERTUS in connection with Defendant's dental implant system.

115.   Defendant's unauthorized use of the mark CERTUS as alleged herein constitutes trademark infringement in violation of 15 U.S.C. § 1114. Defendant's use of the mark CERTUS is likely to cause confusion, mistake and/or deception as to the source or origin of Defendant's goods and/or services, and has falsely suggested that Defendant and its goods and/or services are sponsored by, connected to, or associated with Biomet 3i.

116.   Defendant's wrongful use of the mark CERTUS is knowing, deliberate, and willful.

117.   As a direct and proximate result of Defendant's infringement, Defendant has caused, and will continue to cause, immediate and irreparable injury

to Biomet 3i, including injury to Biomet 3i's business, reputation, and goodwill, for which there is no adequate remedy at law. Biomet 3i is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining Defendant, its agents, employees, representatives and all persons acting in concert with Defendant from engaging in future acts of infringement.

118.   As a direct and proximate result of Defendant's infringement and pursuant to 15 U.S.C. § 1117, Biomet 3i is further entitled to recover from Defendant the monetary damages sustained by it as a result of Defendant's acts in violation of the Lanham Act, 15 U.S.C. § 1114(1). Biomet 3i is at present unable to ascertain the full extent of the monetary damages it has sustained by reason of Defendant's acts, and such amount will be proven at trial.

119.   As a direct and proximate result of Defendant's infringement and pursuant to 15 U.S.C. § 1117, Biomet 3i is further entitled to recover from Defendant the gains, profits and advantages that Defendant has obtained as a result of its acts in violation of the Lanham Act, 15 U.S.C. § 1114(1). Biomet 3i is at present unable to ascertain the full extent of the gains, profits and advantages Defendant has obtained by reason of its acts, and such amount will be proven at trial.

120.   As a direct and proximate result of Defendant's infringement and pursuant to 15 U.S.C. § 1117, Biomet 3i is further entitled to recover the costs of this action.

121.   Biomet 3i is informed and believes, and on that basis alleges, that Defendant's infringing conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Biomet 3i to an award of treble damages, prejudgment interest, and reasonable attorneys' fees.

## COUNT II
### (False Designation of Origin – 15 U.S.C. § 1125(a))

122.   Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

123.   As a result of the experience and care of Biomet 3i in producing and providing its dental implant systems, including the system sold under the CERTAIN Mark, Biomet 3i's Tapered Certain® Implant System has become widely known to have a nationwide reputation for excellence. Moreover, the CERTAIN Mark has become associated with Biomet 3i and has come to symbolize the reputation for quality and excellence of Biomet 3i's products. As such, the CERTAIN Mark has acquired distinctiveness.

124.   Defendant is not authorized to use Biomet 3i's registered CERTAIN Mark or any mark confusingly similar to or that in any way represents or implies that Defendant's goods and/or services are in any way associated with Biomet 3i.

125.   Nevertheless, Defendant has used and continues to use in commerce the designation CERTUS in connection with Defendant's dental implant system.

126.   Defendant's unauthorized use of the mark CERTUS as alleged herein constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

127.   Defendant's use of the CERTUS mark is likely to cause confusion, mistake and/or deception as to the source or origin of Defendant's goods and/or services, and to falsely suggest that Defendant and its goods are sponsored by, connected to, or associated with Biomet 3i.

128.   Defendant's wrongful use of the mark CERTUS is knowing, deliberate, and willful, with an intent to trade on and take advantage of Biomet 3i's goodwill in the CERTAIN Mark.

129.   As a direct and proximate result of Defendant's infringement, Defendant has caused, and will continue to cause, immediate and irreparable injury to Biomet 3i, including injury to its business, reputation, and goodwill, for which there is no adequate remedy at law. Biomet 3i is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining Defendant, its agents, employees,

representatives and all persons acting in concert with Defendant from engaging in future acts of infringement.

130.   As a direct and proximate result of Defendant's infringement and pursuant to 15 U.S.C. § 1117, Biomet 3i is further entitled to recover from Defendant the damages sustained by Biomet 3i as a result of Defendant's acts in violation of the Lanham Act, 15 U.S.C. § 1125(a). Biomet 3i is at present unable to ascertain the full extent of the monetary damages it has sustained by reason of Defendant's acts, and such amount will be proven at trial.

131.   As a direct and proximate result of Defendant's infringement and pursuant to 15 U.S.C. § 1117, Biomet 3i is further entitled to recover from Defendant the gains, profits and advantages that Defendant has obtained as a result of its acts in violation of the Lanham Act, 15 U.S.C. § 1125(a). Biomet 3i is at present unable to ascertain the full extent of the gains, profits and advantages Defendant has obtained by reason of its acts, and such amount will be proven at trial.

132.   As a direct and proximate result of Defendant's infringement and pursuant to 15 U.S.C. § 1117, Biomet 3i is further entitled to recover the costs of this action.

133.   Biomet 3i is informed and believes, and on that basis alleges, that Defendant's conduct was undertaken willfully and with the intention of causing

confusion, mistake or deception, making this an exceptional case entitling Biomet 3i to an award of treble damages, prejudgment interest, and reasonable attorneys' fees.

## COUNT III
## (False Advertising - 15 U.S.C. § 1125)

134.   Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

135.   Defendant has intentionally, knowingly, or otherwise made and distributed, in interstate commerce and in this District, advertisements or related materials that contain false or misleading statements of fact regarding its products. These advertisements contain actual misstatements and/or misleading statements insofar as they claim that Defendant's products are "perfectly matched" to, superior than, or interchangeable with Zimmer Biomet Dental's CERTAIN® and Tapered SCREW-VENT® Implant Systems when, in fact, the products are not.

136.   These false and misleading statements actually deceive, or have a tendency to deceive, a substantial segment of Plaintiffs' customers and potential customers. This deception is material in that it is likely to influence the purchasing decisions of Plaintiffs' customers.

137.   Further, by repeatedly, prominently and pervasively exploiting the Zimmer Biomet Dental's IP in substantially all of its marketing and promotional materials and social media postings, without authorization from Zimmer Biomet

Dental, Defendant's advertising actually deceives, or has the tendency to deceive, a substantial segment of Plaintiffs' customers and potential customers by conveying the erroneous impression that Defendant and its goods are affiliated, connected or associated with Zimmer Biomet Dental.

138.   Defendants' false and misleading advertisements injure both Plaintiffs and consumers.

139.   Defendants' false and misleading advertising violates the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

140.   As a direct and proximate result of Defendant's false and misleading advertising, Defendant has caused, and will continue to cause, immediate and irreparable injury to Plaintiffs, including injury to Zimmer Biomet Dental's business, reputation, and goodwill, for which there is no adequate remedy at law. Zimmer Biomet Dental is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining Defendant, its agents, employees, representatives and all persons acting in concert with Defendant from engaging in future acts of false advertising.

141.   As a direct and proximate result of Defendant's infringement and pursuant to 15 U.S.C. § 1117, Zimmer Biomet Dental is further entitled to recover from Defendant the damages sustained by it as a result of Defendant's acts in violation of the Lanham Act, 15 U.S.C. § 1125(a). Zimmer Biomet Dental is at

present unable to ascertain the full extent of the monetary damages it has sustained by reason of Defendant's acts, and such amount will be proven at trial.

142.  As a direct and proximate result of Defendant's infringement and pursuant to 15 U.S.C. § 1117, Zimmer Biomet Dental is further entitled to recover from Defendant the gains, profits and advantages that Defendant has obtained as a result of its acts in violation of the Lanham Act, 15 U.S.C. § 1125(a). Zimmer Biomet Dental is at present unable to ascertain the full extent of the gains, profits and advantages Defendant has obtained by reason of its acts, and such amount will be proven at trial.

143.  As a direct and proximate result of Defendant's infringement and pursuant to 15 U.S.C. § 1117, Zimmer Biomet Dental is further entitled to recover the costs of this action.

144.  Plaintiffs are informed and believe, and on that basis allege, that Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Zimmer Biomet Dental to an award of treble damages, prejudgment interest, and reasonable attorneys' fees.

## COUNT IV
### (Trademark Infringement - N.J.S.A. § 56:3-13.16)

145.  Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

146.   Defendant is not authorized to use Biomet 3i's registered CERTAIN Mark or any mark confusingly similar to or that in any way represents or implies that Defendant's goods and/or services are in any way associated with Biomet 3i.

147.   Nevertheless, Defendant has used and continues to use in commerce the designation CERTUS in connection with Defendant's dental implant system.

148.   Defendant's unauthorized use of the mark CERTUS as alleged herein constitutes trademark infringement in violation of N.J.S.A. § 56:3-13.16. Defendant's use of the mark CERTUS is likely to cause confusion, mistake and/or deception as to the source or origin of Defendant's goods and/or services, and has falsely suggested that Defendant and its goods and/or services are sponsored by, connected to, or associated with Biomet 3i.

149.   Defendant's wrongful use of the mark CERTUS is knowing, deliberate, and willful.

150.   As a direct and proximate result of Defendant's infringement, Defendant has caused, and will continue to cause, immediate and irreparable injury to Biomet 3i, including injury to Biomet 3i's business, reputation, and goodwill, for which there is no adequate remedy at law. Biomet 3i is therefore entitled to an injunction under N.J.S.A. § 56:3-13.16(d) restraining Defendant, its agents, employees, representatives and all persons acting in concert with Defendant from engaging in future acts of infringement.

151.   As a direct and proximate result of Defendant's infringement and pursuant to N.J.S.A. § 56:3-13.16(d), Biomet 3i is further entitled to recover from Defendant the damages sustained by Biomet 3i as a result of Defendant's acts in violation of N.J.S.A. § 56:3-13.16. Biomet 3i is at present unable to ascertain the full extent of the monetary damages it has sustained by reason of Defendant's acts, and such amount will be proven at trial.

152.   As a direct and proximate result of Defendant's infringement and pursuant to N.J.S.A. § 56:3-13.16(d), Biomet 3i is further entitled to recover from Defendant the gains, profits and advantages that Defendant has obtained as a result of its acts in violation of N.J.S.A. § 56:3-13.16. Biomet 3i is at present unable to ascertain the full extent of the gains, profits and advantages Defendant has obtained by reason of its acts, and such amount will be proven at trial.

153.   As a direct and proximate result of Defendant's infringement and pursuant to N.J.S.A. § 56:3-13.16(d), Biomet 3i is further entitled to recover the costs of this action.

154.   Biomet 3i is informed and believes, and on that basis alleges, that Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Biomet 3i to an award of treble damages, prejudgment interest, and reasonable attorneys' fees.

## COUNT V
## (Unfair Competition - N.J.S.A. § 56:4-1)

155.   Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

156.   Defendant is not authorized to use Biomet 3i's registered CERTAIN Mark or any mark confusingly similar to or that in any way represents or implies that Defendant's goods and/or services are in any way associated with Biomet 3i.

157.   Nevertheless, Defendant has used and continues to use in commerce the designation CERTUS in connection with Defendant's dental implant system.

158.   Defendant's unauthorized use of the mark CERTUS constitutes unfair competition in violation of N.J.S.A. § 56:4-1.

159.   Defendant's use of the mark CERTUS, is likely to cause confusion, mistake and/or deception as to the source or origin of Defendant's goods and/or services, and has falsely suggested that Defendant and its goods and/or services are sponsored by, connected to, or associated with Biomet3i.

160.   Defendant's wrongful use of the mark CERTUS is knowing, deliberate, and willful.

161.   As a direct and proximate result of Defendant's actions described herein, Biomet 3i has suffered, and will continue to suffer, irreparable injury to its business, reputation, and goodwill, unless and until the Court enjoins Defendant's actions. Biomet 3i has no adequate remedy at law.

162.   As a direct and proximate result of Defendant's actions described herein, Biomet 3i has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

## COUNT VI
### (Common Law Unfair Competition)

163.   Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

164.   Defendant's unauthorized use of the mark CERTUS as alleged herein constitutes common law unfair competition. Defendant's use of the mark CERTUS is likely to cause confusion, mistake and/or deception as to the source or origin of Defendant's goods and/or services, and to falsely suggest that Defendant and its goods and/or services are sponsored by, connected to, or associated with Biomet 3i.

165.   Defendant's wrongful use of the mark CERTUS is knowing, deliberate, and willful.

166.   As a direct and proximate result of Defendant's actions described herein, Biomet 3i has suffered, and will continue to suffer, irreparable injury to its business, reputation, and goodwill, unless and until the Court enjoins Defendant's actions. Biomet 3i has no adequate remedy at law.

167.   As a direct and proximate result of Defendant's actions described herein, Biomet 3i has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in its favor and prays:

A.     That this Court permanently enjoin Defendant and each of its officers, partners, affiliates, associates, agents, attorneys, and employees, and all others acting in concert with Defendant, from directly or indirectly infringing Biomet 3i's CERTAIN Mark, from any and all use of CERTUS or any mark confusingly similar to Biomet 3i's CERTAIN Mark or that in any way represents or implies that Defendant's goods and/or services are in any way associated with Biomet 3i, and from otherwise engaging in unfair competition;

B.     That this Court permanently enjoin Defendant and each of its officers, partners, affiliates, associates, agents, attorneys, and employees, and all others acting in concert with Defendant, from engaging in false or misleading advertising with respect to Defendant's Certus and Tapered Screw implant systems and Plaintiffs' Tapered Certain® and the Tapered SCREW-VENT® Implant Systems,

and/or violating Section 43(a) of the Lanham Act, and further order Defendant to remove all such false or misleading advertisements;

      C.     That this Court order Defendant to pay to Plaintiffs such damages as Plaintiffs have sustained by reason of Defendant's willful trademark infringement, false designation of origin, false advertising, unfair competition, and other wrongful conduct;

      D.     That this Court order Defendant to account for and to pay to Plaintiffs all profits derived by Defendant by reason of the acts complained of herein;

      E.     That this Court treble all profits and damages owing to Plaintiffs due to Defendant's willful trademark infringement and false designation of origin pursuant to 15 U.S.C. § 1117;

      F.     That this Court order Defendant to pay Plaintiffs their reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1117; and

      G.     That this Court award Plaintiffs such other further relief as this Court shall deem just.

## <u>REQUEST FOR TRIAL BY JURY</u>

Plaintiffs respectfully request a trial by jury on all issues so triable.

Dated:  August 9, 2021

**FAEGRE DRINKER BIDDLE &
REATH**

By:  */s/ Jack N. Frost, Jr.*
       Jack N. Frost, Jr. (#02531-2005)
       600 Campus Drive
       Florham Park, New Jersey 07932-1047
       Tel.:  (973) 549-7000
       Fax:  (973) 549-9831
       Jack.Frost@faegredrinker.com

       Lauren Steinhaeuser
       (*pro hac vice* to be filed)
       2200 Wells Fargo Center
       90 South Seventh Street
       Minneapolis, Minnesota 55402
       Lauren.Steinhaeuser@faegredrinker.com

       *Attorneys for Biomet 3i, LLC and Zimmer
       Dental, Inc.*